**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PAMELA KLEIN, | |
| Plaintiff, | Civil Action No. |
| v. | JURY TRIAL DEMANDED |
| SPRINT CORPORATION, GORDON BETHUNE, JULIUS GENACHOWSKI, MARCELO CLAURE, STEPHEN KAPPES, MICHEL COMBES, ADM. MICHAEL MULLEN, PATRICK DOYLE, MASAYOSHI SON, RONALD FISHER, AND SARA MARTINEZ TUCKER | |
| Defendants. | |

**COMPLAINT**

Plaintiff Pamela Klein ("Plaintiff"), on behalf of herself, by her undersigned attorneys, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

<u>**NATURE OF THE ACTION**</u>

1.      Plaintiff brings this action against Sprint Corporation ("Sprint" or the "Company") and Sprint's Board of Directors (the "Board") for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a). Specifically, Defendants solicited shareholder votes in connection with the proposed merger of the Company with T-Mobile US, Inc. (together with subsidiaries "T-Mobile" or "Parent"), through a recommendation statement filed with the U.S. Securities and Exchange Commission (the "SEC"), that omits material facts necessary to make the statements therein not false or misleading.

Stockholders need this material information to make an informed decision with respect to their Sprint shares.

2.       On April 29, 2018, the Board caused the Company to enter into a Business Combination Agreement (the "Agreement", "Merger Agreement" or "Business Combination Agreement") with T-Mobile, Huron Merger Sub LLC, a Delaware limited liability company and a wholly owned subsidiary of T-Mobile ("T-Mobile Merger Company"), Superior Merger Sub Corporation, a Delaware corporation and a wholly owned subsidiary of T-Mobile Merger Company ("Merger Sub"), Starburst I, Inc., a Delaware corporation ("Starburst"), Galaxy Investment Holdings, Inc., a Delaware corporation ("Galaxy," and together with Starburst, the "SoftBank US HoldCos") and for the limited purposes set forth therein, Deutsche Telekom AG, organized and existing under the laws of the Federal Republic of Germany ("Deutsche Telekom"), Deutsche Telekom Holding B.V., organized and existing under the laws of the Netherlands ("DT Holding") and SoftBank Group Corp., a Japanese kabushiki kaisha ("SoftBank") (the "Proposed Merger" the "Proposed Transaction" or the "Merger").

3.       In connection with the Proposed Merger, each share of Sprint common stock (with irrelevant exceptions) will be automatically converted into the right to receive 0.10256 shares ("exchange ratio") of T-Mobile common stock, the common stock of the combined company (the "Merger Consideration").

4.       The consummation of the Proposed Merger is subject to certain closing conditions. The Company expects the Proposed Merger to close in the first half of 2019.

5.       On October 1, 2018, in order to convince Sprint's shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a joint materially incomplete and misleading registration statement, which was filed by T-Mobile on Form S-4, with the SEC, on

October 1, 2018 (the "S-4" or the "Solicitation"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

6.      While Defendants are touting the fairness of the Proposed Merger and Merger Consideration to the Company's stockholders in the S-4, Defendants have failed to disclose certain material information that is necessary for stockholders to consider whether or not to vote in favor of the Proposed Merger and properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the S-4 materially incomplete and misleading.

7.      It is imperative that the material information that has been omitted from the S-4 be disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100.

8.      Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Sprint stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

10.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (i) the conduct at issue had an effect in this District; (ii) Sprint is incorporated in this District; (iii) each of the Individual Defendants (defined below) either resides in this District or has extensive contacts within this District; (iv) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

12.     Plaintiff is, and at all relevant times has been, a Sprint stockholder.

13.     Defendant Sprint is a Delaware corporation is a Delaware corporation whose registered agent for service of process Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  Sprint maintains its principal executive offices located at 6200 Sprint Parkway, Overland Park, Kansas 66251. Sprint's common stock is listed on the New York Stock Exchange ("NYSE") under the ticker symbol "S."

14.     Defendant Gordon Bethune ("Bethune") is and has been a director of the Company at all times relevant to this Complaint.

15.     Defendant Patrick Doyle ("Doyle") is and has been a director of the Company at all times relevant to this Complaint.

16.     Defendant Julius Genachowski ("Genachowski") is and has been a director of the Company at all times relevant to this Complaint.

17.     Defendant Michael Mullen ("Mullen") is and has been a director of the Company at all times relevant to this Complaint.

18.     Defendant Sara Martinez Tucker ("Tucker") is and has been a director of the Company at all times relevant to this Complaint.

19.     The Defendants named in ¶¶ 14-18 are the members of the Board who were deemed to be independent and not affiliated with SoftBank, and are referred to herein as the "independent Sprint directors."

20.     Defendant Marcelo Claure ("Claure") a director of the Company at all times relevant to this Complaint. Claure was also Sprint's Executive Chairman, effective May 31, 2018, and previously, he served as Sprint's President from August 2014 until January 2018 and as Chief Executive Officer ("CEO") from August 2014 until May 2018. Mr. Claure is a member of the board of directors of SoftBank Group Corp.("SoftBank") and an officer of certain of its affiliates. SoftBank, through its wholly-owned subsidiaries, is the controlling stockholder of Sprint.

21.     Defendant Stephen Kappes ("Kappes") is and has been a director of the Company at all times relevant to this Complaint. Kappes serves on the Board as the "Security Director" under the National Security Agreement among Sprint, SoftBank, the Department of Justice, the Department of Homeland Security, and the Department of Defense.

22.     Defendant Michel Combes ("Combes") is and has been a director of the Company since January 2018, and currently serves as Sprint's President and CEO.

23.     Defendant Masayoshi Son ("Son") is and has been a director of the Company at all times relevant to this Complaint, and has also served as the CEO and Chairman of SoftBank's board of directors. Mr. Son is SoftBank's controlling stockholder, chairman of the board and chief executive officer. Mr. Fisher is a member of the board of directors of SoftBank and Brightstar, which is a controlled affiliate of SoftBank.

24.     Defendant Ronald Fisher ("Fisher") is and has been a director and Vice Chairman of the Board at all times relevant to this Complaint.

25.     The Defendants named in ¶¶ 20-24 are the members of the Board who were deemed to be affiliated with SoftBank, and are referred to herein as the "SoftBank Affiliate Directors", and together with the "independent Sprint directors" are collectively referred to herein as the "Individual Defendants."

26.     The Individual Defendants, along with Sprint, are collectively referred to as the "Defendants."

## RELEVANT NON-PARTIES

27.     SoftBank is a Japanese *kabushiki kaisha* (stock corporation), originally organized in 1981. SoftBank is a holding company that engages in a range of businesses in the information industry, including mobile communications, broadband infrastructure, fixed-line telecommunications and internet culture.

28.     Starburst is an indirect wholly owned subsidiary of SoftBank and a direct wholly owned subsidiary of SoftBank UK. It was formed in connection with SoftBank's acquisition of Sprint Nextel Corporation for the purpose of holding SoftBank's interest in Sprint.

29.     Galaxy is an indirect wholly owned subsidiary of SoftBank and a direct wholly owned subsidiary of SoftBank UK. It was formed for the purpose of holding SoftBank's indirect interest in Sprint not held by Starburst.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and T-Mobile

30.     Sprint is an American telecommunications company that provides wireless services and is an internet service provider. It is the fourth-largest mobile network operator in the United States and served 54.6 million connections as of Dec. 31, 2017.

31.     T-Mobile is a wireless services provider. It is the third-largest mobile network operator in the United States and serves approximately 72.6 million customers.

**Background of the Proposed Merger According to the Solicitation**

32.     According to the Solicitation, the management and board of directors of each of T-Mobile and Sprint, together with representatives of their majority stockholders—Deutsche Telekom and SoftBank, respectively—regularly consider strategic alternatives, including business combinations and other strategic transactions, as well as remaining independent standalone companies. More specifically, representatives of T-Mobile and Deutsche Telekom, on the one hand, and representatives of Sprint and SoftBank, on the other hand, have held discussions from time to time regarding a possible business combination.

33.     Following the business combination of T-Mobile and MetroPCS, and the acquisition of a majority of the outstanding common stock of Sprint by SoftBank, each of which occurred in mid-2013, representatives of T-Mobile and Deutsche Telekom, on the one hand, and Sprint and SoftBank, on the other hand, held discussions regarding a potential business combination transaction beginning in late 2013 and ending in August 2014. These discussions involved a transaction in which Sprint would acquire T-Mobile for consideration consisting of cash and shares of Sprint common stock, but were unable to reach an agreement.

34.     Following the closing of the FCC's 600 MHz spectrum auction in April 2017, representatives of Sprint, SoftBank, T-Mobile and Deutsche Telekom held discussions from time to time regarding a possible business combination between Sprint and T-Mobile.

35.     In April 2017, the independent Sprint directors held a meeting at which Sprint internal counsel and Shearman & Sterling LLP ("Shearman & Sterling"), which had been engaged as legal counsel to the independent Sprint directors, were present. The independent Sprint directors discussed a possible business combination transaction between Sprint and T-Mobile.

Representatives of Sprint management described the deliberations among Sprint management regarding potential transaction terms and workstreams for such a transaction.

36.     In mid-May 2017, media stories reported that Sprint and T-Mobile were engaging in discussions regarding a possible business combination.

37.     On May 23, 2017, representatives of T-Mobile, Deutsche Telekom, Sprint and SoftBank met to discuss a possible transaction. At the meeting, representatives of T-Mobile and Deutsche Telekom proposed that, given the market rumors of a possible transaction and the potential impact of such rumors on each company's stock price, the parties consider a stock-for-stock merger with a fixed exchange ratio reflecting the intrinsic valuations of each of Sprint and T-Mobile. The representatives of T-Mobile and Deutsche Telekom suggested that such exchange ratio could be a number of shares in the combined company that would imply a discount to Sprint's then current market price given their belief that the market rumors of a potential transaction with T-Mobile had resulted in a higher trading price for Sprint common stock than its fundamental value. Representatives of Sprint and SoftBank responded that they believed that the exchange ratio should be set such that the Sprint stockholders would receive consideration with a value at least equal to the then current market price. At the time of the meeting, the market prices of the companies' respective common stock implied an exchange ratio equivalent to approximately 8.18 shares of Sprint common stock for each share of T-Mobile common stock (or approximately 0.12225 of a share of T-Mobile common stock for each share of Sprint common stock). Deutsche Telekom also communicated that, as a controlling stockholder of T-Mobile, its willingness to consent to a merger transaction between T-Mobile and Sprint was conditioned on Deutsche Telekom continuing to have governance rights consistent with the rights of a controlling stockholder, including for purposes of consolidating the financial statements of the combined

company into the financial statements of Deutsche Telekom, which, in turn, required Deutsche Telekom to retain voting control of at least a majority of the shares of the combined company following the merger. SoftBank indicated that it was willing to consider providing Deutsche Telekom with the right to vote some of its shares in the combined company so that Deutsche Telekom could consolidate the combined company into its financial statements, but SoftBank proposed, among other things, that SoftBank would have substantially equivalent governance rights in the combined company.

38.     From time to time during the period from May 2017 through September 2017, representatives of SoftBank and Sprint met with representatives of a public company ("Company A") and representatives of one of Company A's largest shareholders ("Shareholder X") to discuss a possible business combination between Sprint and Company A.

39.     In late May 2017, the Board held a regularly scheduled meeting. Representatives from management, SoftBank, Raine Securities LLC ("Raine"), Morrison & Foerster LLP ("Morrison & Foerster"), and McKinsey & Company ("McKinsey"), consultant to Sprint, attended. In connection with the consideration of a possible strategic transaction, including a possible transaction with T-Mobile, Morrison & Foerster and Raine had been retained as legal advisor and financial advisor, respectively, to each of Sprint and SoftBank. According to the Solicitation, Raine had been retained taking into consideration, among other things, Raine's extensive knowledge of Sprint and its business, operations, and competitive environment and Raine's breadth of experiences with complex transactions, particularly in the telecommunications sector. Among other business matters, the Board discussed the overall strategy of Sprint, including a potential business combination with T-Mobile and a potential business combination with Company A. The Board was provided with further information on the state of discussions with T-

Mobile and Deutsche Telekom and with Company A. Representatives of McKinsey and Raine discussed possible synergies that may be realized in a transaction with T-Mobile and provided a preliminary analysis of a possible business combination with Company A. Representatives from Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), regulatory co-counsel to Sprint, presented a preliminary regulatory analysis for both the possible transaction with T-Mobile and the possible transaction with Company A.

40.     In late June 2017, SoftBank, Sprint, Company A and a public company ("Company B") entered into a nondisclosure agreement ("NDA") in connection with discussions of a potential strategic transaction. In July 2017, SoftBank and Shareholder X entered into an NDA in connection with discussions of a possible business combination between Sprint and Company A, and Sprint subsequently became a party to the NDA.

41.     In late July 2017, representatives of Sprint, SoftBank, Raine, McKinsey, Company A and Shareholder X met to discuss a possible business combination between Sprint and Company A.

42.     In late July and early August 2017, representatives of T-Mobile and Deutsche Telekom, on the one hand, and representatives of Sprint and SoftBank, on the other hand, re-engaged in discussions regarding a possible business combination. During these discussions, representatives of T-Mobile and Deutsche Telekom reiterated their view that the exchange ratio should be determined based in part on the intrinsic value of the businesses. Representatives of Sprint and SoftBank again responded that any exchange ratio should be based on, or provide Sprint stockholders with a premium. At the time of the July 2017 discussions, the market prices of the companies' respective common stock implied an exchange ratio equivalent to approximately 7.52 shares of Sprint common stock for each share of T-Mobile common stock (or approximately

0.13298 of a share of T-Mobile common stock for each share of Sprint common stock). The parties did not reach agreement on the exchange ratio during these discussions, but representatives from the parties agreed to engage in further discussions to determine whether they could align on terms for a transaction and to conduct due diligence. Subsequently, each of T-Mobile and Sprint made available to representatives of the other party due diligence materials in an electronic data room and the parties held meetings in connection with their due diligence investigations.

43.     In early August 2017, the Board held a regularly scheduled meeting which included representatives from Sprint management, SoftBank, Raine, McKinsey, Morrison & Foerster and Skadden in attendance. Among other business matters, the Board held a broad discussion with Sprint management and Raine regarding recent discussions with T-Mobile and Deutsche Telekom, Company A and Company B.

44.     In August 2017, representatives from Morrison & Foerster and Raine held a telephonic meeting with legal representatives of Shareholder X, during which Morrison & Foerster presented potential transaction structures and governance arrangements for a business combination between Sprint and Company A. On the same day, representatives of Raine and McKinsey were requested to, and did, meet with Shareholder X's financial advisor to discuss other aspects of a possible business combination.

45.     From time to time during the period from May 2017 to early November 2017, T-Mobile, Deutsche Telekom, Sprint and SoftBank engaged in discussions, negotiations and diligence regarding the terms of a possible business combination transaction. During this period, the T-Mobile board of directors (the "T-Mobile Board"), and a transaction committee of the T-Mobile Board (the "T-Mobile transaction committee"), the members of which were Thomas Dannenfeldt, Lawrence H. Guffey, Thorsten Langheim, John J. Legere and Kelvin R. Westbrook,

met telephonically or in person on multiple occasions. Wachtell, Lipton, Rosen & Katz ("Wachtell Lipton") and Goldman Sachs & Co. LLC ("Goldman Sachs") assisted T-Mobile and Deutsche Telekom in connection with their review and evaluation of a possible transaction. In addition, in connection with their evaluation of a possible transaction with Sprint, from June through early August 2017, PJT Partners LP ("PJT Partners") assisted the independent T-Mobile directors, and in August 2017, the T-Mobile Board approved the engagement of PJT Partners as financial advisor to T-Mobile.

46. During the period from May 2017 to September 2017, the Board met, and the independent Sprint directors separately met, on multiple occasions. During these meetings, the Board and the independent Sprint directors received regular updates from representatives of Sprint management, SoftBank and Sprint's outside advisors (including the outside advisors to the independent Sprint directors) regarding their discussions with Deutsche Telekom and T-Mobile, as well as Company A and Company B, and discussed possible transactions with T-Mobile, Company A and Company B. The Board and the independent Sprint directors, both separately and together with the Board, considered possible terms for such transactions, overall strategy matters, regulatory and other legal matters, financial analyses of the possible transactions, and other matters related to the possible transactions.

47. In late September 2017, at the direction of Sprint and SoftBank, representatives from Raine and McKinsey met with representatives from Company A to discuss a possible business combination between Sprint and Company A. No

48. Also in September 2017, the Board established the Sprint independent committee (the "Independent Committee"), which consisted solely of all of the independent Sprint directors, each of whom Sprint deemed to be independent and not affiliated with SoftBank, in light of

SoftBank's ownership of a majority of the outstanding Sprint common stock and the potential for related party transactions between Sprint and SoftBank in connection with the Merger. The Board resolved it would not approve a business combination transaction with T-Mobile unless the Independent Committee recommended a business combination transaction with T-Mobile. In addition, the Board authorized the Independent Committee to review and participate in negotiations related to the transaction and to determine whether any possible transaction was advisable, fair to, and in the best interests of Sprint and the Sprint stockholders, other than SoftBank and certain of its affiliates (the "Sprint minority stockholders").

49.     In connection with its review and evaluation of possible transactions with T-Mobile and other parties, the Independent Committee retained Centerview Partners LLC ("Centerview") to act as its financial advisor. During the course of the discussions between the parties from September 2017 through early November 2017, the Independent Committee met on multiple occasions, during which the Independent Committee reviewed and evaluated the terms under discussion between the parties, as well as the current regulatory environment and the regulatory approval process, other risks related to deal certainty and diligence matters. In addition, representatives of the Independent Committee and its advisors regularly participated in discussions with the Board, representatives of Sprint management, SoftBank and their advisors with respect to the Merger and the terms thereof. The Board also met on multiple occasions during this period to discuss the potential transactions.

50.     On September 26, 2017, representatives of T-Mobile, Deutsche Telekom, Sprint and SoftBank and the respective legal and financial advisors of each held a meeting to discuss various matters in connection with a possible business combination.

51.     On November 1, 2017, following extensive discussions and negotiations between the parties, at the direction of the T-Mobile Board, representatives of T-Mobile and Deutsche Telekom sent a proposal to Sprint and SoftBank to seek to determine whether it would be possible to reach agreement on the principal terms for a stock-for-stock business combination of T-Mobile and Sprint, which remained subject to the approval of the T-Mobile independent committee and the T-Mobile Board. T-Mobile and Deutsche Telekom believed that the terms of the proposal would provide Sprint stockholders with a premium relative to the intrinsic value of Sprint.

52.     The following day, representatives of Sprint and SoftBank sent a revised proposal that included a revised exchange ratio and revisions to certain of the governance proposals, capital structure terms and other terms outlined by T-Mobile and Deutsche Telekom that were more favorable to Sprint and SoftBank.

53.     The parties discussed the transaction terms reflected in these proposals, but ultimately were unable to reach agreement. As a result, the parties mutually determined to cease discussions at that time. On November 4, 2017, T-Mobile and Sprint issued a joint press release announcing that they had ended merger discussions at that time.

54.     Later in November 2017, representatives of T-Mobile, Deutsche Telekom, Sprint and SoftBank communicated as to the reasons discussions regarding a possible business combination had broken off, and whether it would be productive to re-engage in such discussions.

55.     During the period from November 2017 to February 2018, representatives of Sprint and Raine (acting at the direction of Sprint), on the one hand, and representatives of a public company ("Company C"), on the other hand, met from time to time to discuss a possible business combination between Sprint and Company C, and in December 2017, Sprint and Company C entered into an NDA in connection with these discussions.

56.     In late January and early February 2018, representatives of Sprint and SoftBank and representatives of T-Mobile and Deutsche Telekom again discussed the possibility of re-engaging in discussions regarding a possible business combination between Sprint and T-Mobile.

57.     On January 30 and 31, 2018, the Board held a regularly scheduled meeting. Representatives of Sprint management discussed with the Board the potential reopening of discussions with T-Mobile and Deutsche Telekom, Sprint's long-term outlook and financial projections, general strategic issues, and the regulatory outlook for a business combination with T-Mobile.

58.     On February 15, 2018, representatives of T-Mobile and Deutsche Telekom and advisors to Sprint and SoftBank held a meeting during which they discussed developments since the parties ended their prior discussions in November 2017 and determined to hold an additional meeting, subsequently scheduled for February 23, 2018, to discuss a possible business combination.

59.     On February 23, 2018, representatives of T-Mobile and Deutsche Telekom met in person with representatives of Sprint and SoftBank to discuss a possible business combination transaction. During the meeting, the parties discussed their respective perspectives on the exchange ratio for a stock-for-stock business combination transaction. The representatives of T-Mobile and Deutsche Telekom initially indicated that they believed that an exchange ratio equivalent to 10.5 shares of Sprint common stock for each share of T-Mobile common stock (or approximately 0.09524 of a share of T-Mobile common stock for each share of Sprint common stock) was appropriate. Representatives of Sprint and SoftBank expressed their view that an exchange ratio equivalent to 9 shares of Sprint common stock for each share of T-Mobile common stock (or

approximately 0.11111 of a share of T-Mobile common stock for each share of Sprint common stock) was appropriate at that time.

60.     On February 25, 2018, representatives of Sprint and representatives of Company C met to discuss a possible business combination between Sprint and Company C.

61.     On March 9, 2018, the Independent Committee held a telephonic meeting with representatives of Centerview and Goodwin Procter LLP ("Goodwin"), the Independent Committee's legal counsel, in attendance. The Independent Committee discussed with its advisors Sprint's recent performance, Sprint's budget and financial forecasts approved by the Board during the fall of 2017 and potential value enhancement alternatives for Sprint, including potential alternatives for enhancing value for Sprint on a standalone basis as well as potential strategic alternatives. Goodwin then reviewed with the Independent Committee their fiduciary duties and responsibilities in the context of a variety of potential strategic scenarios.

62.     On March 26 and 27, 2018, representatives of T-Mobile, Deutsche Telekom, Sprint and SoftBank met in person to discuss a possible business combination transaction. During the period between the November 4, 2017 announcement by the parties that they had ended merger discussions and the March 27, 2018 meeting, the price per share of T-Mobile common stock had increased by approximately 3%, while the price per share of Sprint common stock had decreased by approximately 26%. At the meeting, representatives of T-Mobile and Deutsche Telekom indicated that they would be prepared to proceed with negotiations at an exchange ratio equivalent to 10 shares of Sprint common stock for each share of T-Mobile common stock (or 0.10000 of a share of T-Mobile common stock for each share of Sprint common stock). Representatives of Sprint and SoftBank indicated that they would not continue discussions with T-Mobile and Deutsche Telekom on that basis. After further discussions, the parties agreed, subject to further

due diligence, to engage in further negotiations and planning for a stock-for-stock merger on the proposed basis of an exchange ratio equivalent to 9.75 shares of Sprint common stock for each share of T-Mobile common stock (or 0.10256 of a share of T-Mobile common stock for each share of Sprint common stock). Deutsche Telekom reiterated that, as the controlling stockholder of T-Mobile, its willingness to consent to a merger transaction between T-Mobile and Sprint was conditioned on Deutsche Telekom continuing to have governance rights consistent with the rights of a controlling stockholder. The parties therefore continued their discussions on the basis that SoftBank would enter into a voting and proxy agreement pursuant to which it would provide Deutsche Telekom with the right to vote some or all of SoftBank's shares in the combined company. The parties also reached a preliminary understanding, subject to the review, consideration and approval of the T-Mobile Board, the T-Mobile independent committee, the Board and the Independent Committee, on certain governance provisions, including that the chief executive officer of T-Mobile and the chief executive officer of Deutsche Telekom would serve as the initial chief executive officer of the combined company and initial chairman of the board of directors of the combined company, respectively. In addition, the parties discussed the terms of an amended and restated stockholders' agreement that would generally retain Deutsche Telekom's rights under the existing stockholder's agreement between T-Mobile and Deutsche Telekom and provide certain approval, information, registration and other rights to SoftBank as a significant stockholder of the combined company, and which would provide Deutsche Telekom with the right to designate nine directors (including two independent directors) and SoftBank with the right to designate four directors (including two independent directors) for the initial combined company board of directors, with one additional director who would be the chief executive officer of the combined company.

63.     On March 29, 2018, on behalf of T-Mobile and Deutsche Telekom, Wachtell Lipton sent a term sheet setting forth certain proposed key transaction terms to Morrison & Foerster. The proposed terms included an exchange ratio equivalent to 9.75 shares of Sprint common stock for each share of T-Mobile common stock (or 0.10256 of a share of T-Mobile common stock for each share of Sprint common stock), as discussed between the parties previously. The term sheet also set forth the proposed terms of a roaming agreement between T-Mobile and Sprint to be entered into concurrently with the business combination agreement, as well as governance, capital structure and other proposed terms for the possible transaction.

64.     On April 2, 2018, the Independent Committee held a telephonic meeting with representatives of Sprint management in attendance. The representatives of Sprint management provided an update of ongoing due diligence, discussions and negotiations with T-Mobile and Deutsche Telekom. The Independent Committee asked questions of, and had a detailed discussion with, representatives of Sprint management on these and other matters in connection with the potential transaction, including regulatory and process matters.

65.     On April 2 and 3, 2018, representatives of T-Mobile and Sprint held in-person meetings to conduct due diligence and engage in discussions regarding, among other topics, a preliminary proposed business plan, network plan and capital structure for the combined company, due diligence matters, regulatory planning and a roaming agreement proposed to be entered into in connection with the possible transaction. Subsequently, while the parties continued to engage in planning for the combined company and in negotiations regarding open transaction terms, each of T-Mobile and Sprint made available to representatives of the other party due diligence materials in an electronic data room.

66.     On April 3, 2018, Wachtell Lipton sent a draft business combination agreement and other draft agreements to Morrison & Foerster.

67.     On April 4, 2018, the Independent Committee held a telephonic meeting, with representatives of Sprint management, Raine, Morrison & Foerster, Centerview and Goodwin in attendance. Representatives from Sprint management presented an overview of financial forecasts for Sprint, which were subsequently submitted to the Board for approval on April 8, 2018. Representatives from Sprint management also updated the Independent Committee on recent discussions between representatives of Sprint management and representatives of T-Mobile management. The Independent Committee then engaged in a detailed discussion with representatives of Sprint management on several matters, including further clarification on the financial forecasts for Sprint, ramifications of any public leak of the potential transaction, potential synergies and job impacts and various regulatory matters. The roaming agreement, which would continue to provide benefits to Sprint if the proposed transaction did not occur and mitigate Sprint's potentially foregone development opportunities, was also discussed. The Independent Committee met separately with Goodwin and Centerview and discussed topics to be covered at future meetings.

68.     On April 5, 2018, Morrison & Foerster sent a revised term sheet to Wachtell Lipton, which proposed revised transaction terms reflecting the positions of Sprint and SoftBank, including terms relating to covenants, closing conditions and expense sharing relating to financing for the transaction, communications by T-Mobile and Sprint with their business counterparties in connection with a transaction and interim operating covenants to which T-Mobile and Sprint would be subject prior to the closing of a transaction.

69.     On April 8, 2018, the Board held a telephonic meeting with representatives of Sprint management, Raine, Morrison & Foerster, Centerview and Goodwin. During the meeting, the Board received an update on the business combination transaction from Sprint management, Raine and Morrison & Foerster. Representatives of Sprint management presented to the Board a proposed budget for the fiscal year ending March 31, 2019 as well as financial forecasts for Sprint, which were prepared by Sprint management. Following a detailed discussion, the Board approved the proposed budget for the fiscal year ending March 31, 2019 and the financial forecasts for Sprint presented by representatives of Sprint management. Representatives of Sprint management also presented to the Board an adjusted set of financial forecasts. The adjusted financial forecasts were initially developed by Sprint management and discussed with the Board beginning in January of 2018, and were developed in order to take into account certain Sprint-specific and overall industry challenges. The adjusted Sprint forecasts were further refined by Sprint management before they were presented to the Board and its financial advisors at the April 8 meeting.

70.     On April 9 and 10, 2018, representatives of T-Mobile, Deutsche Telekom and Wachtell Lipton, and representatives of Sprint, SoftBank and Morrison & Foerster, discussed the open transaction terms, and on April 10, 2018, Morrison & Foerster sent revised drafts of the business combination agreement and other draft agreements reflecting the position of Sprint and SoftBank to Wachtell Lipton.

71.     In addition, on April 10, 2018, media reports indicated that T-Mobile and Sprint were re-engaging in discussions regarding a possible business combination transaction.

72.     On April 12, 2018, the Independent Committee held a telephonic meeting, with representatives of Sprint management, Morrison & Foerster, Goodwin and Centerview in attendance for all or part of the meeting. Representatives of Sprint management provided an update

on discussions with T-Mobile and Deutsche Telekom and also presented an overview of a proposed communications plan regarding the potential transaction. After the presentations by representatives of Sprint management, the representatives of Sprint management and Morrison & Foerster left the meeting. Goodwin then presented to the Independent Committee an overview of the Independent Committee's fiduciary duties and responsibilities in connection with the potential transaction with T-Mobile. Goodwin then presented the key terms of the potential transaction, highlighting the key transaction terms related only to SoftBank, including, among other things, the treatment of current related-party agreements between Sprint and SoftBank, board and committee designation rights at the combined company, veto rights for certain actions, a matching right for a sale of the combined company, a right to acquire stock of the combined company and a right of first refusal for sales of combined company common stock by Deutsche Telekom. The members of the Independent Committee had a detailed discussion on these topics.

73.     On April 13, 2018, the Independent Committee held a telephonic meeting with representatives of Goodwin and Centerview in attendance. At the meeting, Centerview presented its preliminary standalone financial analysis of Sprint based on Sprint's budget and financial forecasts approved by the Board on April 8, 2018 and Sprint management's adjusted financial forecasts also presented at the April 8th meeting. Centerview also reviewed Sprint's historical performance and provided an illustrative analysis of the present value of Sprint's stock price under a number of scenarios. Throughout the meeting, the members of the Independent Committee discussed potential risks that could impact Sprint's actual performance versus the financial forecasts.

74.     On April 13, 2018, representatives of T-Mobile and Deutsche Telekom began negotiating the terms of a commitment letter with certain financial institutions, pursuant to which

such financial institutions would commit to provide debt financing to T-Mobile in connection with the transaction, the proceeds of which would be used to refinance certain existing debt of T-Mobile, Sprint and their respective subsidiaries and for working capital needs of the combined company.

75.     On April 15, 2018, Wachtell Lipton sent a revised version of the term sheet to Morrison & Foerster, and the next day, Wachtell Lipton and Morrison & Foerster discussed the open transaction terms.

76.     From April 18 to April 20, 2018, representatives of T-Mobile and Deutsche Telekom, together with Wachtell Lipton, and representatives of Sprint and SoftBank, together with Morrison & Foerster and Raine, held in-person meetings to negotiate the open transaction terms, including covenants, closing conditions and expense sharing relating to financing for the transaction, certain regulatory provisions to be included in the business combination agreement, interim operating covenants to which T-Mobile and Sprint would be subject prior to the closing of a transaction, and certain governance arrangements for the combined company. During these meetings, a number of open points were resolved, subject to approvals the companies' directors and SoftBank; however, the parties were not able to reach an agreement on certain terms, including provisions relating to financing for the transaction and whether there would be conditions to the closing of the transaction relating to financing matters.

77.     On April 19, 2018, the Independent Committee held a telephonic meeting. Representatives from Sprint management, Morrison & Foerster, Skadden, Lawler Metzger, Keeney & Logan LLC ("Lawler"), FCC regulatory counsel to Sprint, Goodwin and Centerview attended all or part of the meeting. Morrison & Foerster, Skadden, Lawler and Goodwin discussed with the Independent Committee various regulatory matters in connection with the potential

transaction with T-Mobile. Members of the Independent Committee engaged in a discussion with these advisors. After the representatives from Sprint management, Morrison & Foerster, Skadden and Lawler had left the meeting, Goodwin discussed further the regulatory considerations of the potential transaction. Goodwin also discussed with the committee the current status of discussions with T-Mobile and Deutsche Telekom, as well as certain key transaction terms for the potential transaction, including terms related to a termination under certain regulatory conditions, financing matters and closing conditions and termination rights tied to Sprint's and the combined company's credit ratings. Goodwin also highlighted the current status of discussions on certain transaction terms that related only to SoftBank, including, among other things, the treatment of current related-party agreements between Sprint and SoftBank, veto rights for certain actions, a right to acquire combined company common stock and a right of first refusal for sales of combined company common stock by Deutsche Telekom.

78.     On April 22, 2018, Wachtell Lipton sent revised drafts of the business combination agreement and other draft agreements to Morrison & Foerster. The revised draft of the business combination agreement included, among other changes, a condition to the closing of the transaction requiring a minimum credit rating for the combined company after giving effect to the merger transactions.

79.     On April 23, 2018, the Independent Committee held a telephonic meeting, at which representatives of Goodwin and Centerview were present. Centerview presented its preliminary financial analysis of the proposed business combination between Sprint and T-Mobile, including a discussion of Sprint's standalone valuation, T-Mobile's standalone valuation and relative valuation. The Independent Committee, Centerview and Goodwin discussed Centerview's presentation. In addition, Goodwin provided an update on the status of negotiations and reviewed

with the Independent Committee certain transaction terms, and the Independent Committee and Goodwin discussed the transaction terms.

80. On April 24, 2018, the Independent Committee held a telephonic meeting. In attendance for all or part of the meeting were representatives of Sprint management, Morrison & Foerster, Skadden, Lawler, J.P. Morgan, Goodwin and Centerview. J.P. Morgan had been engaged in April 2017 as a financial advisor to Sprint in connection with a potential strategic transaction with T-Mobile. In light of the size and complexity of the merger transactions, the Board engaged J.P. Morgan, in addition to Raine, because of J.P. Morgan's experience in and reputation for providing financial advisory services to an extensive range of clients, particularly in the telecommunications industry. At the meeting, Skadden and Lawler gave a presentation regarding certain regulatory considerations in connection with the proposed transaction between Sprint and T-Mobile. The representatives of J.P. Morgan then presented J.P. Morgan's preliminary financial analysis of the financial terms of the proposed transaction. Members of the committee engaged in a discussion with the representatives of J.P. Morgan regarding their presentation. In addition, representatives of Sprint management provided an overview of the status of negotiations between the parties and reviewed the proposed transaction terms, highlighting the status of discussions on financing and capital structure matters and termination rights. Representatives of Sprint management also engaged in a discussion with the Independent Committee on potential synergies from the proposed transaction.

81. Also, on April 24, 2018, Morrison & Foerster sent revised drafts of the business combination agreement and other draft agreements to Wachtell Lipton. Among other changes, the revised draft of the business combination agreement deleted the condition to the closing of the transaction requiring a minimum credit rating for the combined company after giving effect to the

merger transactions. Beginning later that day and continuing through April 27, 2018, representatives of T-Mobile and Deutsche Telekom, together with Wachtell Lipton, Latham & Watkins, and representatives of Sprint and SoftBank, together with Morrison & Foerster and Raine, held in-person meetings to negotiate and seek to resolve the remaining open points and finalize the transaction documentation, including the business combination agreement, the amended and restated stockholders' agreement and related amendments to the certificate of incorporation and bylaws of T-Mobile reflected in the amended and restated certificate of incorporation and amended and restated bylaws, respectively, and the proxy agreement. During these negotiations, representatives of Sprint and SoftBank proposed to accept the minimum credit rating condition if the business combination agreement included an obligation of T-Mobile to pay $1 billion to Sprint if the business combination agreement were terminated due to a failure of that condition, subject to certain exceptions. Representatives of T-Mobile and Deutsche Telekom proposed that any amount payable by T-Mobile would be significantly lower. In addition, during this period, representatives of Deutsche Telekom and management of T-Mobile provided updates to the T-Mobile independent committee and its representatives, including Latham & Watkins, and representatives of Deutsche Telekom, T-Mobile management and the T-Mobile independent committee, including Latham & Watkins, negotiated and finalized the proposed terms of the treatment of outstanding debt owed by T-Mobile to Deutsche Telekom in connection with the transaction, including the terms of the financing matters agreement, which, among other things, would provide for Deutsche Telekom to consent to the incurrence by T-Mobile USA of secured debt in connection with and after the completion of the merger and for the repayment and termination by T-Mobile USA of certain facilities provided by and debt owed to Deutsche Telekom upon closing of the merger, as well as the terms of an amendment to the trademark

license, which would provide for a cap on the fee that would otherwise have been payable by the combined company to Deutsche Telekom thereunder, and the terms of the amended and restated stockholders' agreement. At the conclusion of these meetings, the parties agreed that the amount payable by T-Mobile as a result of termination due to a failure of the condition to closing requiring a minimum credit rating of the combined company (subject to certain exceptions) would be $600 million, and also finalized the other proposed terms for the proposed transaction, subject to approvals by the T-Mobile Board, T-Mobile independent committee and Deutsche Telekom, as well as the Board, Independent Committee and SoftBank.

82.     On April 26, 2018, the Board held an in-person meeting, with representatives of Sprint management, Raine, J.P. Morgan, Centerview, Morrison & Foerster, Skadden and Goodwin in attendance. Prior to the meeting, the Sprint directors, including the members of the Independent Committee, reviewed disclosures of certain relationships made by each of Raine, J.P. Morgan and Centerview, including disclosure with respect to certain fees which may have been received from Sprint, SoftBank, T-Mobile and Deutsche Telekom. At the meeting, representatives of Morrison & Forester reviewed with the Board the proposed transaction terms, including terms relating to governance, regulatory matters and financing. Representatives of Morrison & Foerster also reviewed with the directors their fiduciary duties in connection with their consideration of the transaction with T-Mobile. Representatives of Sprint management reviewed the synergies expected to be achieved in the proposed transaction with T-Mobile, and noted that management believed that the proposed transaction with T-Mobile was the best path forward for Sprint. Representatives of Sprint management also reviewed with the directors the proposed communications and outreach plan relating to the transaction and the transaction approval process and timeline, and discussed the final findings of the due diligence review of T-Mobile. In addition,

representatives of Raine, J.P. Morgan and Centerview presented their respective firms' updated preliminary financial analyses of the financial terms of the proposed transaction.

83.    On April 29, 2018, the Board, including all of the members of the Independent Committee, held a meeting. Representatives of Sprint management, Morrison & Foerster, Raine, J.P. Morgan, Goodwin and Centerview attended the meeting. At the meeting, representatives of Morrison & Foerster reviewed and discussed with the Board the final transaction terms, and the Board considered final drafts of the business combination agreement and the other agreements to be entered into in connection with the business combination transaction. Representatives of Centerview presented Centerview's financial analyses in connection with the transaction and rendered Centerview's oral opinion to the Independent Committee, which was subsequently confirmed by delivery of a written opinion dated as of April 29, 2018, that as of such date and based upon and subject to the assumptions made, procedures followed, matters considered, and qualifications and limitations upon the review undertaken by Centerview in preparing its opinion, the exchange ratio provided for pursuant to the business combination agreement was fair, from a financial point of view, to the holders of Sprint common stock (other than Sprint common stock held in treasury or held by Merger Company, the SoftBank parties, the Deutsche Telekom parties or any affiliate of Sprint or T-Mobile). Representatives of Goodwin reviewed the Independent Committee's duties and responsibilities as well as the approvals required from the Independent Committee. The Independent Committee then determined that the business combination agreement and the transactions contemplated by the agreement were fair to, and in the best interests of, Sprint and the Sprint minority stockholders, and unanimously resolved to recommend that (1) the business combination agreement be submitted to the Board, (2) the Board approve and declare advisable the business combination agreement and the transactions contemplated thereby, (3) the

Board submit the business combination agreement to Sprint's stockholders for adoption and (4) the Board recommend adoption of the business combination agreement to Sprint's stockholders. In addition, representatives of Raine and J.P. Morgan provided their respective firms' updated financial analyses of the final financial terms of the proposed transaction. At the meeting, Raine rendered its oral opinion, subsequently confirmed by a written opinion dated April 29, 2018, to the Board to the effect that, as of such date, based upon and subject to the assumptions, limitations, qualifications, conditions and other matters set forth in its opinion, the exchange ratio pursuant to the business combination agreement was fair, from a financial point of view, to the holders of Sprint common stock as of immediately prior to the HoldCo mergers, taking into account the merger. In addition, at the meeting, J.P. Morgan rendered its oral opinion to the Board, subsequently confirmed by delivery of a written opinion dated April 29, 2018, to the effect that, as of such date, based upon and subject to the assumptions, limitations, qualifications, conditions and other matters set forth in its opinion, the exchange ratio in the proposed merger was fair, from a financial point of view, to the holders of Sprint common stock as of immediately prior to the HoldCo mergers. Upon consideration of the recommendation of the Independent Committee, the Board unanimously determined that the business combination agreement and the transactions contemplated by the agreement were fair to, and in the best interests of, Sprint and its stockholders, approved and declared advisable the business combination agreement and the transactions contemplated thereby, resolved to submit the business combination agreement to Sprint's stockholders for adoption and resolved to recommend adoption of the business combination agreement to Sprint's stockholders.

84.     Later on April 29, 2018, T-Mobile USA entered into the original commitment letter pursuant to which the financial institutions party thereto committed to provide up to $38.0 billion

in secured and unsecured debt financing in connection with the transaction, and T-Mobile, Sprint, Deutsche Telekom, SoftBank and certain of their affiliates executed the business combination agreement. Following the execution of the business combination agreement, T-Mobile and Sprint issued a joint press release announcing entry into the business combination agreement.

85.     Later on April 29, 2018, SoftBank, SoftBank Group Capital Limited ("SoftBank UK"), Starburst I, Inc. ("Starburst") and Galaxy Investment Holdings, Inc. ("Galaxy") entered into a support agreement (the "SoftBank support agreement") under which they agreed to vote the outstanding shares of Sprint common stock held by Starburst and Galaxy approving the Sprint proposals (the "SoftBank written consent"). Because Starburst and Galaxy are, collectively, the beneficial holder of a majority of the Sprint common stock outstanding as of the Sprint record date, delivery of the SoftBank written consent will constitute receipt by Sprint of the Sprint stockholder approval standing alone.

**The Company Announces the Proposed Merger**

86.     On April 29, 2018, the Company and T-Mobile issued a joint press release announcing the Proposed Merger. The press release stated, in pertinent part:

> Bellevue, Washington and Overland Park, Kansas – April 29, 2018 – T-Mobile US (NASDAQ: TMUS) and Sprint Corporation (NYSE: S) today announced they have entered into a definitive agreement to merge in an all-stock transaction at a fixed exchange ratio of 0.10256 T-Mobile shares for each Sprint share or the equivalent of 9.75 Sprint shares for each T-Mobile US share. Based on closing share prices on April 27, this represents a total implied enterprise value of approximately $59 billion for Sprint and approximately $146 billion for the combined company. The new company will have a strong closing balance sheet and a fully funded business plan with a strong foundation of secured investment grade debt at close.
>
> The combined company will be named T-Mobile, and it will be a force for positive change in the U.S. wireless, video, and broadband industries. The combination of spectrum holdings, resulting network scale, and expected run rate cost synergies of $6+ billion, representing a net present value (NPV) of $43+ billion will

supercharge T-Mobile's Un-carrier strategy to disrupt the marketplace and lay the foundation for U.S. companies and innovators to lead in the 5G era.

The New T-Mobile will have the network capacity to rapidly create a nationwide 5G network with the breadth and depth needed to enable U.S. firms and entrepreneurs to continue to lead the world in the coming 5G era, as U.S. companies did in 4G. The new company will be able to light up a broad and deep 5G network faster than either company could separately. T-Mobile deployed nationwide LTE twice as fast as Verizon and three times faster than AT&T, and the combined company is positioned to do the same in 5G with deep spectrum assets and network capacity.

The combined company will have lower costs, greater economies of scale, and the resources to provide U.S. consumers and businesses with lower prices, better quality, unmatched value, and greater competition. The New T-Mobile will employ more people than both companies separately and create thousands of new American jobs.

Following closing, the new company will be headquartered in Bellevue, Wash., with a second headquarters in Overland Park, Kan. John Legere, current President and Chief Executive Officer of T-Mobile US and the creator of T-Mobile's successful Un-carrier strategy, will serve as Chief Executive Officer, and Mike Sievert, current Chief Operating Officer of T-Mobile, will serve as President and Chief Operating Officer of the combined company. The remaining members of the new management team will be selected from both companies during the closing period. Tim Höttges, current T-Mobile US Chairman of the Board, will serve as Chairman of the Board for the new company. Masayoshi Son, current SoftBank Group Chairman and CEO, and Marcelo Claure, current Chief Executive Officer of Sprint, will serve on the board of the new company.

"This combination will create a fierce competitor with the network scale to deliver more for consumers and businesses in the form of lower prices, more innovation, and a second-to-none network experience – and do it all so much faster than either company could on its own," said John Legere. "As industry lines blur and we enter the 5G era, consumers and businesses need a company with the disruptive culture and capabilities to force positive change on their behalf."

"The combination of these two dynamic companies can only benefit the U.S. consumer. Both Sprint and T-Mobile have similar DNA and have eliminated confusing rate plans, converging into one rate plan:

Unlimited," said Marcelo Claure. "We intend to bring this same competitive disruption as we look to build the world's best 5G network that will make the U.S. a hotbed for innovation and will redefine the way consumers live and work across the U.S., including in rural America. As we do this, we will force our competitors to follow suit, as they always do, which will benefit the entire country. I am confident this combination will spur job creation and ensure opportunities for Sprint employees as part of a larger, stronger combined organization, and I am thrilled that Kansas City will be a second headquarters for the merged company."

**Creating #5GforAll – the Only Broad and Deep 5G Nationwide Network**

It is critically important that America and American companies lead in the 5G era. Early U.S. leadership in 4G fueled a wave of American innovation and entrepreneurship that gave rise to today's global mobile Internet leaders, creating billions in economic value and job growth. America's early 4G leadership is credited with creating 1.5 million jobs and adding billions to the U.S. GDP. With 5G, the stakes are even higher – because 5G will be even more transformational.

Only the combined company will have the network capacity required to quickly create a broad and deep 5G nationwide network in the critical first years of the 5G innovation cycle – the years that will determine if American firms lead or follow in the 5G digital economy. With Sprint's expansive 2.5 GHz spectrum, T-Mobile's nationwide 600 MHz spectrum, and other combined assets, the New T-Mobile plans to create the highest capacity mobile network in U.S. history. Compared to T-Mobile's network today, the combined company's network is expected to deliver 15x faster speeds on average nationwide by 2024, with many customers experiencing up to 100x faster speeds than early 4G.

Neither company standing alone can create a nationwide 5G network with the breadth and depth required to fuel the next wave of mobile Internet innovation in the U.S. and answer competitive challenges from abroad.

Neither can AT&T and Verizon in the near term, even though they will still respectively own 34% and 172% more spectrum than the combined company. Even with their vast resources, AT&T and Verizon cannot rapidly build nationwide 5G and their planned 5G networks will only be available sporadically in just a handful of very limited areas. To build nationwide 5G, they either have to kick current customers off LTE, which would take years, or use a type of

spectrum (millimeter wave) that can only carry a signal 2,000 feet from a cell site – versus multiple miles for other spectrum – making it nearly impossible for either of them to create a truly nationwide 5G network quickly.

Ubiquitous high-speed 5G service and Internet of Things ("IoT") capabilities will ignite innovation across industries and create the conditions for U.S. firms and innovators to lead the globe in the 5G era.

"Going from 4G to 5G is like going from black and white to color TV," added Claure. "It's a seismic shift – one that only the combined company can unlock nationwide to fuel the next wave of mobile innovation."

5G for All will unleash incredible benefits and capabilities for consumers and businesses. Imagine, for example, augmented reality heads-up displays that see everything you do, and provide real-time cloud-driven information about the people and objects around you. Imagine never losing anything again because low-cost sensors with decade long battery life are embedded in everything you own. Imagine an earpiece providing real-time translation as a friend speaks to you in another language. Imagine environmental sensors in infrastructure and for agriculture having a profound impact on productivity.

**Shifting the Un-carrier Strategy Into Overdrive – Reducing Prices and Driving More Competition**

The new company expects prices to drop as competition heats up. The New T-Mobile will have lower costs, greater economies of scale, and unprecedented network capacity – a winning combination that should make wireless, and adjacent industries like cable and broadband, more affordable for everyone.

The combination will dramatically accelerate T-Mobile's successful Un-carrier strategy, which is built around listening to customers and solving their pain points. It will also leverage Sprint's incredible spectrum assets and strong DNA.

The deal will create more competition and unmatched value for customers across the country. And, existing T-Mobile and Sprint customers will benefit from increased speeds, coverage, and performance as the two companies' networks combine.

Wireless, broadband, and video markets are rapidly converging. AT&T is now the largest TV provider in the country. Comcast added more wireless phone customers last year than AT&T and Verizon

combined, and Charter is launching wireless this year. And, more than 1 in 10 Americans (12%) use wireless as their only Internet or broadband connection, freeing themselves from the grip of the traditional, uncompetitive in-home broadband providers.

"This isn't a case of going from 4 to 3 wireless companies – there are now at least 7 or 8 big competitors in this converging market. And in 5G, we'll go from 0 to 1. Only the New T-Mobile will have the capacity to deliver real, nationwide 5G," added Legere. "We're confident that, once regulators see the compelling benefits, they'll agree this is the right move at the right time for consumers and the country."

In this rapidly converging marketplace, the new company will bring more choice and competition – for all consumers, including three key underserved areas:

\* \* \*

**Transaction Details and Financial Profile**

The new company expects to create substantial value for T-Mobile and Sprint shareholders through an expected $6+ billion in run rate cost synergies, representing a net present value (NPV) of $43+ billion, net of expected costs to achieve such cost synergies. This transaction will also enhance the financial position of the combined company.

\* \* \*

The Boards of Directors of T-Mobile and Sprint have approved the transaction. Deutsche Telekom and SoftBank Group are expected to hold approximately 42% and 27% of diluted economic ownership of the combined company, respectively, with the remaining approximately 31% held by the public. The Board will consist of 14 directors, 9 nominated by Deutsche Telekom and 4 nominated by SoftBank Group, including Masayoshi Son, Chairman and CEO of SoftBank Group, and Marcelo Claure, CEO of Sprint. John Legere, CEO of the New T-Mobile, will also serve as a director. Upon consummation of the transaction, the combined company is expected to trade under the (TMUS) symbol on the NASDAQ.

The new company will have some of the most iconic brands in wireless – T-Mobile, Sprint, MetroPCS, Boost Mobile, Virgin Mobile – and will determine brand strategy after the transaction closes.

The transaction is subject to customary closing conditions, including regulatory approvals. The transaction is expected to close no later than the first half of 2019.

**Advisors**

PJT Partners is acting as financial advisor to T-Mobile and rendered a fairness opinion to its Board of Directors. Goldman Sachs is acting as financial advisor to Deutsche Telekom and T-Mobile and rendered a fairness opinion to the T-Mobile Board of Directors. Deutsche Bank also acted as financial advisor to T-Mobile. Wachtell, Lipton, Rosen & Katz is providing legal counsel to T-Mobile and Deutsche Telekom, with Cleary Gottlieb and DLA Piper serving as regulatory counsel. Evercore is acting as financial advisor to a committee of independent directors of T-Mobile and rendered a fairness opinion, and Latham & Watkins is providing legal counsel to the committee of independent directors. Richards, Layton and Finger is serving as Delaware Counsel. Morgan Stanley served as financial advisor to Deutsche Telekom. Barclays, Credit Suisse, Deutsche Bank, Goldman Sachs, Morgan Stanley, and RBC are providing T-Mobile with committed debt financing to support the transaction, and PJT Partners is advising T-Mobile on the debt financing associated with the transaction.

The Raine Group LLC is acting as lead financial advisor to Sprint. J.P. Morgan is also acting as a financial advisor to Sprint. Centerview Partners LLC is acting as financial advisor to the Independent Transaction Committee of the Board of Directors of Sprint. The Raine Group LLC, J.P. Morgan and Centerview Partners LLC each rendered fairness opinions to the Board of Directors of Sprint. Morrison & Foerster LLP is lead legal counsel to Sprint and for SoftBank Group. Goodwin Procter LLP is legal counsel to the Independent Transaction Committee of the Board of Directors of Sprint. Skadden, Arps, Slate, Meagher & Flom LLP is regulatory co-counsel and Potter Anderson Corroon LLP is Delaware Counsel. Mizuho Securities Co., Ltd. and SMBC Nikko Securities Inc. are acting as financial advisors to SoftBank Group.

## The Preclusive Deal Provisions

87.     In addition to failing to conduct a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for Sprint.

88.     Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers; (ii) an information rights provision that requires the Company to disclose the identity of any competing bidder and to furnish T-Mobile with the terms of any competing bid and confidentiality agreement; (iii) Sprint is not permitted to terminate the Agreement notwithstanding receipt of a proposal for a more favorable transaction, even in the event that the Board changes or withdraws its recommendation that the Sprint stockholders provide their written consent with respect to the Sprint proposals; and (iv) SoftBank executed, as anticipated, a support agreement requiring it to deliver its written consent with respect to its shares of Sprint common stock in favor of the Sprint proposals, which written consent would result in the required approval for the Sprint proposals without the need for additional approval from any of the Sprint minority stockholders.

89.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Sprint.

90.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Sprint's shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Merger.

**Interests of the Sprint's Officers and Directors in Completing the Proposed Merger**

91.     Certain of the officers and/or directors of Sprint have significant financial interests in completing the Proposed Merger. As the Solicitation states, these interests include, but are not limited to, the continued service of certain directors of Sprint as directors of the combined company, the continued employment of certain executive officers of Sprint by the combined company, the treatment in the merger transactions of Sprint stock options, Sprint time-based

restricted stock units, Sprint performance-based restricted stock units, the treatment of the Sprint Employees Stock Purchase Plan and severance and other rights held by Sprint directors and executive officers, and a combination agreement regarding continued indemnification of and advancement of expenses to T-Mobile and Sprint directors and officers.

92.     Notably, as inducement for the parties to enter into the Merger Agreement, the Board negotiated for SoftBank to be able to negotiate four directors of the new company.

93.     Sprint's insiders stand to reap substantial financial benefits for securing the deal with T-Mobile. According to the Solicitation, all unvested stock options and restricted share awards held by the Company's executive officers will become upon the Proposed Transaction closing, as estimated by the Solicitation:

| Name | Cash ($)(2) | Equity ($)(3) | Perquisites/ Benefits ($)(4) | Total ($)(5) |
|---|---|---|---|---|
| Marcelo Claure | 501,370 | 53,400,000 | — | 53,901,370 |
| Michel Combes | 9,747,945 | 22,462,536 | 45,412 | 32,255,893 |
| Andrew Davies | — | — | — | — |
| Nestor Cano | 5,524,110 | 11,810,569 | 62,022 | 17,396,701 |
| Kevin Crull | 3,399,452 | 18,438,768 | 59,430 | 21,897,650 |
| Jorge Gracia | 2,355,753 | 4,961,693 | 49,309 | 7,366,755 |
| Tarek Robbiati(1) | — | — | — | — |

## MATERIALLY FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE SOLICITATION

94.     The defendants filed a materially incomplete and misleading Solicitation with the SEC and disseminated it to Sprint's stockholders. The Solicitation misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

95.     Specifically, as set forth below, the Solicitation fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the background of the Merger; (ii) Sprint and T-Mobile's financial projections, (iii)

the valuation analyses prepared by Sprint's financial advisors in connection with the rendering of their fairness opinions, and; (iv) the conflicts of Sprint's financial advisors. Accordingly, Sprint stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

**Material Omissions Concerning Background Information**

96.     The Solicitation discloses that NDAs were entered into between SoftBank Shareholder X (to which Sprint subsequently became a party), and with Companies B and C. However, the S-4 does not describe the terms of the NDAs, including whether such agreements included a "don't-ask, don't waive" provision, standstill provision or other impediments to a market check. The S-4 further omits a description of the circumstances under which such provisions would fall away. This information is material to a reasonable stockholder seeking to evaluate the Proposed Merger, including the Board's decision-making concerning the sale process (or absence thereof).

97.     The solicitation discloses that Sprint warrants will be cancelled with one exception: the warrant to purchase 7,288,630 shares of Sprint common stock issued by Sprint to a non-affiliate of Sprint on May 16, 2016 (the "specified Sprint warrant" or the "Non-SoftBank Sprint Warrant") will be assumed by T-Mobile in connection with the transactions contemplated by the business combination agreement, unless exercised prior to the closing. The Solicitation estimates the value of the Sprint warrant as $8 million. The Solicitation does not disclose the owner of the specified Sprint warrant. This information is material to a reasonable stockholder seeking to evaluate the Proposed Merger, including being able to evaluate whether the owner of the specified Sprint warrant, who stands to receive $8 million in value, was otherwise involved in any way in the Proposed Transaction and so may be conflicted.

**Material Omissions Concerning Sprint's and T-Mobile's Financial Projections**

98.     The Solicitation discloses what it referrers to as the "Sprint management Sprint forecasts", "adjusted Sprint management Sprint forecasts", "T-Mobile management Sprint forecasts", "T-Mobile management T-Mobile forecasts", and "combined company forecasts". Each of these financial forecasts includes non-GAAP measures of EBITDA, Adjusted EBITDA, and Levered free cash flow, but Defendants failed to provide stockholders with the necessary line item projections for the metrics used to calculate the non-GAAP metrics or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

99.     To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Proxy Statement that: "The Company Projections include 'non-GAAP financial measures,' which should not be viewed as a substitute for, or superior to, U.S. GAAP financial measures and may be different from non-GAAP financial measures used by other companies. Furthermore, there are limitations inherent in non-GAAP financial measures because they exclude items, including charges and credits, that are required to be included in a U.S. GAAP presentation." As such, Sprint's stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

**Material Omissions Concerning Raine's, J.P. Morgan's, and Centerview's Financial Analyses**

100.    The Solicitation describes Raine's, J.P. Morgan's, and Centerview's (the "Sprint financial advisors") fairness opinions and the various valuation analyses they performed in support

of their opinions. However, the description of the Sprint financial advisors' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Sprint's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Sprint financial advisors' relative fairness opinion in making an informed decision with respect to their Sprint shares. This omitted information, if disclosed, would significantly alter the total mix of information available to Sprint's stockholders.

***Discounted Cash Flow Analyses***

101.    Each of the Sprint financial advisors performed a discounted cash flow ("DCF") analysis of Sprint and T-Mobile.

102.    The S-4's disclosure of DCF analyses of Sprint is materially incomplete and misleading because it fails to disclose all information necessary for a reasonable stockholder to understand the import of such analysis, including (i) the basis for differing selections of discount rates of Raine (discount rates ranging from 7.00% to 8.00%, reflecting estimates of Sprint's weighted average cost of capital), J.P. Morgan (discount rates from 6.50% to 7.50% based on J.P. Morgan's analysis of the weighted average cost of capital for Sprint), and Centerview (discount rates ranging from 7.25% to 8.25% based on Centerview's analysis of Sprint's weighted average cost of capital and utilized mid-year convention); (ii) with regards to the terminal growth rate range used: what assumptions were provided by the management of Sprint and how those assumptions were adjusted by the management of Sprint to create a normalized period as the starting point for the application of the terminal growth rate, and; (iii) the assumptions and inputs applied when calculating Sprint's levered free cash flows, which, as alleged above, are not reconciled with GAAP numbers. The sensitivity of a discounted cash flow analysis to these inputs and metrics

makes the omitted information particularly material to a stockholder asked to evaluate the Proposed Merger.

103.    The S-4's disclosure of DCF analyses of T-Mobile is materially incomplete and misleading because it fails to disclose all information necessary for a reasonable stockholder to understand the import of such analysis, including (ii) with regards to the terminal growth rate range used, the basis for differing selections of discount rates of Raine (perpetuity growth rates ranging from 0.0% to 1.00%, which range was selected based on guidance from Sprint management and Raine's professional judgment and experience), J.P. Morgan (terminal growth rate ranging from 0.00% to 1.00% to the unlevered free cash flows of T-Mobile for calendar year 2022, which were adjusted by the management of Sprint to create a normalized period as the starting point for the application of the terminal growth rate), and Centerview (perpetuity growth rates ranging from 1.0% to 2.0%) and; (iii) the assumptions and inputs applied when calculating T-Mobile's levered free cash flows, which, as alleged above, are not reconciled with GAAP numbers. The sensitivity of a discounted cash flow analysis to these inputs and metrics makes the omitted information particularly material to a stockholder asked to evaluate the Proposed Merger.

104.    As to Raine's DCF analysis of the combined company, it is materially incomplete and misleading because it fails to disclose all information necessary for a reasonable stockholder to understand the import of such analysis, including (i) the basis for Raine's selection of a discount rate range (7% to 8%) and why estimates of Sprint's weighted average cost of capital were used to calculate the same, (ii) the basis for Raine's assumed perpetuity growth rates (0.0% to 1.00%), and (iii) the assumptions and inputs applied when calculating the combined free cash flows. The sensitivity of a discounted cash flow analysis to these inputs and metrics makes the omitted information particularly material to a stockholder asked to evaluate the Proposed Merger.

*Selected Comparable Companies Analysis*

105.     The S-4's disclosure of comparable companies analyses by the Sprint financial advisors presented to the Sprint's shareholders is materially incomplete and misleading because it fails to disclose all information necessary for a reasonable stockholder to understand the import of such analysis, including (i) the objective criteria used in Goldman's selection of purportedly comparable companies and (ii) an explanation for why only those companies were chosen for comparison.

106.     This is especially important where, as here, in valuing Sprint and T-Mobile, Raine selected AT&T Inc., Verizon Communications Inc., and United States Cellular Corp.; Centerview selected AT&T Inc. and Verizon Communications Inc., and J.P. Morgan selected AT&T Inc., T-Mobile, United States Cellular Corporation, and Verizon Communications Inc.

107.     Additionally, in comparing companies, J.P. Morgan utilized "2018E adjusted cash EBITDA" for Sprint and T-Mobile. That amount was not disclosed for either Sprint or T-Mobile, and must be disclosed for both.

*Precedent Transaction Analyses*

108.     The S-4's disclosure of Sprint financial advisors' Selected Precedent Transaction Analysis is materially incomplete and misleading because it fails to disclose all information necessary for a reasonable stockholder to understand the import of such analysis, including (i) the objective criteria the Sprint financial advisors used to select purportedly comparable transactions and (ii) with the exception of the Centerview presentation, the Solicitation omits the multiples of each of the precedent transactions.

109.     This is especially important where, as here, the Sprint financial advisors selected different, but overlapping, precedent transactions:

As to Raine:

| Announcement Date | Target | Acquirer |
|---|---|---|
| September 2, 2013 | Verizon Wireless | Verizon Communications Inc. |
| July 12, 2013 | Leap Wireless International, Inc. | AT&T Inc. |
| October 15, 2012 | Sprint Nextel Corporation | SoftBank Corp. |
| October 3, 2012 | MetroPCS Communications, Inc. | T-Mobile USA, Inc. |
| March 20, 2011* | T-Mobile USA, Inc. | AT&T Inc. |
| November 7, 2008 | Centennial Communications Corp. | AT&T Inc. |
| June 5, 2008 | Alltel Corporation | Verizon Wireless |

As to J.P. Morgan:

| Announcement Date | Target | Acquirer |
|---|---|---|
| June 5, 2008 | Alltel Corporation | Verizon Communications Inc. |
| November 7, 2008 | Centennial Communications Corp. | AT&T Inc. |
| March 20, 2011 | T-Mobile | AT&T Inc.(1) |
| April 15, 2013 | MetroPCS Communications, Inc. | T-Mobile |
| June 10, 2013 | Sprint | SoftBank |
| July 12, 2013 | Leap Wireless International, Inc. | AT&T Inc. |
| September 2, 2013 | Vodafone Group plc | Verizon Communications Inc. |

As to Centerview:

| Announcement Date | Acquirer | Target | EV / LTM Adj. EBITDA |
|---|---|---|---|
| June 2008 | Verizon Wireless | Alltel Corporation(1) | 8.9x |
| June 2013 | SoftBank Corp. | Sprint Nextel Corporation | 8.1x(2) |
| July 2013 | AT&T Inc. | Leap Wireless International, Inc. | 7.8x / 7.5x(3) |
| November 2008 | AT&T Inc. | Centennial Communications Corp. | 7.2x |
| March 2011 | AT&T Inc. | T-Mobile USA, Inc.(4) | 7.1x |
| April 2013 | T-Mobile USA, Inc. | MetroPCS Communications, Inc. | 5.5x(5) / 4.5x(6) |
| September 2013 | Verizon Communications Inc. | Vodafone Group Plc's stake in Cellco Partnership, Inc.(7) | 9.4x |

## *Analysts' Price Targets*

110.   According to the Solicitation:

Raine reviewed publically available equity research analysts' 12-month share price targets for Sprint common stock and T-Mobile common stock. Raine noted that the price targets issued by those research analysts with publicly available price targets ranged from approximately $3.00 to $7.50 per share of Sprint common stock and $65.00 to $80.00 per share of T-Mobile common stock, excluding one price target for T-Mobile common stock and one price target for Sprint common stock that Raine determined were not comparable for purposes of Raine's review. Raine then calculated the implied combined company exchange ratio by (1) dividing the low end of the implied equity value per share of the T-Mobile common stock of $65.00 by the high end of the implied equity value per share of the Sprint common stock of $7.50, and (2) dividing the high end of the implied equity value per share of T-Mobile common stock by the low end of the implied equity value per share of Sprint common stock of $3.00. This analysis resulted in an implied exchange ratio of a number of shares of Sprint common stock for each share of T-Mobile common stock of 8.7x to 26.7x.

* * *

… J.P. Morgan reviewed certain publicly available equity research analyst share price targets for the Sprint common stock and noted that the range of such price targets was $2.00 per share to $7.50 per share, with the median for such price targets at $5.75 per share, and compared that to (1) the closing trading price per share of Sprint common stock of $6.50 as of April 27, 2018, (2) the unaffected closing trading price per share of Sprint common stock of $5.14 on April 9, 2018, and (3) the implied value of the merger consideration of $6.13 per share based on the exchange ratio pursuant to the business combination agreement and the unaffected closing trading price per share of T-Mobile common stock of $59.74 on April 9, 2018.

* * *

… J.P. Morgan also reviewed certain publicly available equity research analyst share price targets for the T-Mobile common stock and noted that the range of such price targets was $65.00 per share to $82.00 per share, with the median for such price targets at $75.00 per share, and compared that to (1) the closing trading price per share of T-Mobile common stock of $64.52 as of April 27, 2018 and (2) the unaffected closing trading price per share of T-Mobile common stock of $59.74 on April 9, 2018.

* * *

… Centerview reviewed stock price targets for shares of Sprint's common stock in Wall Street research analyst reports publicly available as of April 27, 2018, which indicated the latest available low and high stock price targets for shares of Sprint's common stock ranging from $4.50 to $7.00 per share, excluding outliers and brokers with price targets that explicitly reflect the impact of speculation of a transaction with T-Mobile. Centerview also reviewed stock price targets for shares of T-Mobile's common stock in Wall Street research analyst reports publicly available as of April 27, 2018, which indicated the latest available low and high stock price targets for shares of T-Mobile's common stock ranging from $65.00 to $82.00 per share, excluding outliers.

111.    As to these disclosures, the Solicitation fails to disclose which public equity research analysts were reviewed and each of their specific price targets. Given the non-overlapping ranges used, and the exclusion of outliers and analysts with price targets that explicitly reflect the

impact of speculation (as opposed to implicitly considering the same, or not considering the same), the Solicitation must be amended to disclose which public equity research analysts were reviewed by each of the Sprint financial advisors, and each of those analysts' specific price targets.

* * *

112.    The omission of the above information renders the Solicitation materially false and misleading.

113.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and violated securities laws in failing to include this information in the Solicitation. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the Company's other shareholders will be unable to make a fully-informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**Material Omissions Concerning Raine's Potential Conflicts of Interest**

114.    The Solicitation discloses that

> In the two years prior to the date of its opinion, Raine frequently provided financial advisory and investment banking services to SoftBank, the majority equityholder of Sprint, which are unrelated to the merger, for which Raine received customary compensation. Further, SoftBank previously engaged Raine to act as SoftBank's financial advisor in connection with its consideration of a potential transaction between Sprint and T-Mobile, including a potential merger, which engagement has been completed and for which Raine received customary compensation. Raine is not entitled to receive any further compensation pursuant to such engagement in connection with the completion of the merger transactions. Entities affiliated with SoftBank beneficially own a minority interest in Raine, and affiliates of SoftBank and Raine are investors in investment funds managed by Raine and SoftBank, respectively.

115.    The Solicitation, however, fails to disclose, during the two years preceding the date of Raine's opinion: (i) the amount of "customary compensation" Raine and its affiliates received

in connection with its commercial or investment banking relationships with SoftBank and affiliates of SoftBank; (ii) details of the minority interest that entities affiliated with SoftBank beneficially own in Raine, and (iii) detail about SoftBank's and Raine's investments in investment funds managed by each other.

116.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives. That is especially true where, here, Raine acted as lead financial advisor to Sprint, and J.P. Morgan was engaged as an additional financial advisor to Sprint.

117.    The omission of this information renders the statements in the "Background of the Merger; Reasons for Recommendation" and "Financial Analyses and Opinion" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

## COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER)

118.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

119.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

120.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

121.    Defendants have issued the S-4 with the intention of soliciting stockholders support for the Proposed Merger. Each Defendant reviewed and authorized the dissemination of the S-4, which fails to provide critical information detailed above.

122.    In so doing, Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles as officers and/or directors, were aware of the omitted material information but failed to disclose such information, in violation of Section 14(a). Defendants therefore had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

123.    The S-4 is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

124.    Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the S-4 and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

125.    Defendants violated securities laws in preparing and reviewing the S-4. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact violates securities laws. Defendants chose to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

126.    The misrepresentations and omissions in the S-4 are material to Plaintiff and Sprint's other shareholders, each of whom will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

127.    Plaintiff and Sprint's other shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and Sprint's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

## (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT)

128.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

129.     The Individual Defendants acted as controlling persons of Sprint within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sprint, and participation in and/or awareness of Sprint's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

130.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

131.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

132.     In addition, as set forth in the S-4 sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

133.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

134.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

135.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and Sprint's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

(A)    declaring that the Recommendation Statement is materially false and/or misleading;

(B)    enjoining, preliminarily and permanently, the Proposed Transaction until the Recommendation Statement is cured;

(C)    in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D)    directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(E)      awarding Plaintiff the costs of this action, including a reasonable allowance for the

fees and expenses of Plaintiff's attorneys and experts; and

(F)      granting Plaintiff such further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 9, 2018                    NAPOLI SHKOLNIK, LLC

/s/ *R. Joseph Hrubiec*
R. Joseph Hrubiec, Esq. (#5500)
919 Market Street
Suite 1801
Wilmington, Delaware 19801
(302) 330-8025

Mark Levine (*pro hac vice forthcoming*)
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Phone: (212) 687-7230
Fax: (212) 490-2022
mlevine@ssbny.com

*Attorneys for Plaintiff*